1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Pamela E. Prescott, Esq. (328243)
pamela@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6806
Facsimile: (800) 520-5523

Attorneys for Plaintiff,
Joubin Mortezapour

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOUBIN MORTEZAPOUR,** Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**EASY DIAL INTERNATIONAL, INC.; FAST DIAL INC.; RADIUS NETWORKS, INC.**<br><br>Defendants. | **Case No.:** 2:20-cv-06904-GW-MAA<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELEIF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.***<br><br>**JURY TRIAL DEMANDED** |

- 1 -

**INTRODUCTION**

1.     Plaintiff JOUBIN MORTEZAPOUR ("Mr. Mortezapour," or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action for damages and injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of defendant RADIUS NETWORKS, INC. ("Radius Networks" or "Defendant") in negligently, knowingly and/or willfully transmitting unsolicited, autodialed text messages to cellular telephones of consumers, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., ("TCPA"), thereby invading the privacy of Plaintiff and the putative class members.

2.     Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3.     Upon information and belief, Defendant sent automated text messages to Plaintiff and others similarly situated without their prior express written consent in order to solicit business. This is exactly the type of telephonic contact the TCPA was designed to prevent.

4.     Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

**NATURE OF THE ACTION**

5.     In 1991, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., ("TCPA"), in response to complaints about certain telemarketing practices.

6.     In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not

SECOND AMENDED CLASS ACTION COMPLAINT

universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11.   Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12.

7.     The Federal Trade Commission ("FCC") is charged with the authority to issue regulations implementing the TCPA. According to findings by the FCC, automated calls and text messages are prohibited under the TCPA because receiving them is a greater invasion of privacy and nuisance compared to live solicitation calls. The FCC has also acknowledged that wireless customers are charged for any incoming calls and text messages.

8.     In 2015, the FCC noted, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1 (2015).

9.     The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers.

10.     One of the most prevalent advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a text messaging system allows for the transmission and receipt of text messages to and from wireless telephones.

SECOND AMENDED CLASS ACTION COMPLAINT

11.     According to a recent study, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds - from coupons to phishing schemes - sent directly to user's cell phones."[1]

12.     Unlike more conventional advertisements, text message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

13.     The transmission of an unsolicited text messages to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

### JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises out of violation of federal law. 47 U.S.C § 227(b).

15.     Because Defendant directs and conducts business within the State of California and this judicial district, personal jurisdiction is established.

16.     Personal jurisdiction and venue are proper in the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) Plaintiff resides within this judicial district; (2) the conduct complained of herein occurred within this judicial district; and (3) Defendant conducted business within this judicial district at all times relevant. Specifically, Defendant invaded Plaintiff's privacy by contacting Plaintiff on his cellular telephone, which occurred while Plaintiff was located in the County of Los Angeles, State of California, which is within this judicial district.

---

[1] Amanda Lenhart, *Cell Phones and American Adults*, Pew Research Center (Sept. 2, 2010), https://www.pewresearch.org/internet/2010/09/02/cell-phones-and-american-adults/.

**PARTIES**

17.    Plaintiff is an individual residing in the County of Los Angeles, State of California, and is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

18.    Upon information and belief, Plaintiff alleges that Radius Networks is a corporation founded in 2011 and incorporated is Delaware, with principal place of business is located at 3255 Grace St. NW, Washington, DC 20007.

19.    Upon information and belief, the website for Radius Networks is www.radiusnetworks.com.

20.    Upon information and belief, Radius Networks is a technology-based company that offers services such as "Customer Engagement."

21.    Upon information and belief, Radius Networks sends automated text messages to consumers as a regular part of it business, including for or on behalf of The Dominguez Firm.

22.    Upon information and belief, The Dominguez Firm is a large personal injury law firm in the Los Angeles area with several offices throughout the State of California.

23.    Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

24.    Plaintiff alleges that at all times relevant herein, Defendant conducted business in the State of California, in the County of Los Angeles, and within this judicial district.

**FACTUAL ALLEGATIONS**

25.    Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (818) ***-8768 (the "8768 Number"). The 8768 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

26.    In July of 2020, Plaintiff saw a billboard advertisement for legal

1   services. The billboard instructed those interested in inquiring about legal services to
2   call "#HURT".

3       27.    #HURT is an example of an abbreviated dialing code, which is a
4   condensed mobile vanity code used by companies for marketing purposes.

5       28.    Upon information and belief, Easy Dial International, Inc. provides
6   abbreviated dial codes services to several clients throughout the United States,
7   utilizing codes such as #HURT.

8       29.    Upon information and belief, The Dominguez Firm leases, or has
9   leased, the abbreviated dial code #HURT from Easy Dial International, Inc. during
10  the proposed Class Period.

11      30.    On or about July 28, 2020, at approximately 2:30 p.m., Plaintiff called
12  "#HURT" from his cellular telephone ending in 8768. Before Plaintiff could even
13  begin asking about the advertised legal services, Defendant sent an unsolicited text
14  message to the 8768 Number via automated technology.

15      31.    Upon information and belief, Defendant uses Caller ID technology to
16  business and law firms in order to capture the phone number of incoming cell phone
17  calls so that marketing text messages can be quickly transmitted to potential
18  customers.

19      32.    Indeed, less than a minute after Plaintiff called #HURT, Defendant sent
20  an SMS marketing text message that displayed it was from the phone number (814)
21  208-9400, without Plaintiff's prior express written consent.

22      33.    This text message was received by Plaintiff at approximately 2:31 p.m.

23      34.    The text message to the 8768 Number read:

24
25      The Dominguez Firm Top Injury Lawyers No One Fights
        Harder For You You Win, Or You Don't Pay! Home or
26      Hospital Visits www.DominguezFirm.com 800-818-1818
        Thank you for calling The Dominguez Firm Injured? You
27      Win, Or You Don't Pay! Call From Your Cell #HURT
28      #4878

35.    The text message contained no method for Plaintiff to instruct Defendant to stop sending Plaintiff unwanted text messages.

36.    Plaintiff is not a current or former client of Defendant, nor does Plaintiff have a legal case with The Dominguez Firm.

37.    Because Plaintiff is alerted when a text message is received to Plaintiff's cellular device, the unsolicited text message that Defendant transmitted to Plaintiff's cellular device invaded Plaintiff's privacy and distracted Plaintiff upon receipt.

38.    Upon information and belief, Defendant sent the aforementioned text message to Plaintiff's cellular telephone using a telephone number that is leased by Defendant or Defendant's agent(s) or affiliate(s) and is used for operating Defendant's text message marketing campaign.

39.    Upon information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, the same or substantially similar unsolicited text message to thousands of customers' cellular telephones during the class period.

40.    Upon information and belief, Defendant can automatically send text notifications for all customer orders based on configurable site settings.

41.    Upon information and belief, the automated text messaging system used by Defendant to send the text message to Plaintiff has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

42.    Upon information and belief, Defendant utilized an "automated telephone dialing system" because the text message sent to the 8768 Number was sent from a telephone number or short message script technology utilized to send text messages to consumers without human intervention; and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers automatically.

43.    The text message at issue sent by Defendant constituted an "advertisement" and/ or "telemarketing" as prohibited by the TCPA because Defendant sent the text message to Plaintiff in order to advertise The Dominguez Firm's personal injury attorney services and also because Defendant sent the text message for the purpose of advertising its business to Plaintiff in the future.

44.    Defendant's telephonic communications to Plaintiff were not made for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A)(iii).

45.    Plaintiff never provided "prior express written consent' or any other form of consent to Defendant or any affiliate, subsidiary, or agent of Defendant to transmit text messages to the 8768 Number by means of an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

46.    Through Defendant's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

47.    Plaintiff was personally affected by Defendant's aforementioned conduct because Plaintiff was frustrated that Defendant annoyed Plaintiff with an uninvited marketing text message without Plaintiff's prior express consent.

48.    The text messages from Defendant, or its agent(s), violated 47 U.S.C. § 227(b)(1)(A)(iii).

**CLASS ACTION ALLEGATIONS**

49.    Plaintiff brings this action on behalf of Plaintiff and all others similarly situated (the "Class").

50.    Plaintiff represents, and is a member of, the Class, pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3), which is defined as follows:

> All persons within the United States who were sent any automated marketing text message by Defendant and/or its employees and/or agents to said person's cellular telephone, following a call to an abbreviated dialing code by said person, between July 31, 2018 and the present.

KAZEROUNI
LAW GROUP, APC

51. Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

52. Plaintiff reserves the right to redefine the Class, and to add and redefine any additional subclass as appropriate based on discovery and specific theories of liability.

53. The Class that Plaintiff seeks to represent contains numerous members and is clearly ascertainable including, without limitation, by using Defendant's records to determine the size of the Class and to determine the identities of individual Class members.

**Numerosity**

54. The Class members are so numerous that joinder of all members would be unfeasible and impractical. The membership of the Class is currently unknown to Plaintiff at this time. However, given that, on information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, unsolicited text messages to hundreds, if not thousands, of customers' cellular telephones nationwide during the proposed class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

**Commonality**

55. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. Those common questions of law and fact include, without limitation, the following:

a) Whether within the four years prior to the filing of this Complaint, Defendant or employees or agents transmitted any marketing text

KAZEROUNI LAW GROUP, APC

messages without the prior express written consent of Plaintiff and Class members using an "automatic telephone dialing system";

b) Whether Defendant can meet its burden to show Defendant obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send marketing text messages complained of, assuming such an affirmative defense is raised;

c) Whether Defendant's conduct was knowing and/or willful;

d) Whether Plaintiff and the members of the Class were damaged thereby, and the extent of damages for such violation; and,

e) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

**Typicality**

56.   Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom they are similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all Class members' as demonstrated herein.

57.   Plaintiff represents and is a Class member of the Class because Plaintiff received at least one marketing text message through the use of an automatic telephone dialing system, without providing prior express written consent to the Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of Class members and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members Plaintiff seeks to represent.

58.   Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

**Adequacy**

59.   Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom Plaintiff is similarly situated, as

demonstrated herein. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationship, conflicts, or differences with any Class member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class member. Neither Plaintiff nor Plaintiff's counsel have any interests adverse to those of the other Class members.

**Predominance**

60.    Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members of the class. The elements of the legal claims brought by Plaintiff and members of the Class are capable of proof at trial through evidence that is common to the class rather than individual to its members.

**Superiority**

61.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.  Even if every individual Class member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.

62.    Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual

1   issues.  By contrast, conducting this action as a class action will present fewer
2   management difficulties, conserve the resources of the parties and the court system,
3   and protect the rights of each Class member.  Further, it will prevent the very real
4   harm that would be suffered by numerous Class members who will be unable to
5   enforce individual claims of this size on their own, and by Defendant's competitors,
6   who will be placed at a competitive disadvantage because they chose to obey the
7   law.  Plaintiff anticipates no difficulty in the management of this case as a class
8   action.

9       63.   The prosecution of separate actions by individual Class members may
10   create a risk of adjudications with respect to them that would, as a practical matter,
11   be dispositive of the interests of other Class members not parties to those
12   adjudications, or that would otherwise substantially impair or impede the ability of
13   those non-party Class members to protect their interests.

14      64.   The prosecution of individual actions by Class members would
15   establish inconsistent standards of conduct for Defendant.

16      65.   Defendant has acted or refused to act in ways generally applicable to the
17   Class, thereby making appropriate final and injunctive relief or corresponding
18   declaratory relief with regard to members of the Class as a whole.   Likewise,
19   Defendant's conduct as described above is unlawful, is capable of repetition, and
20   will continue unless restrained and enjoined by the Court.

21      66.   The Class may also be certified because:

22          (a)    the prosecution of separate actions by individual Class members
23                 would create a risk of inconsistent or varying adjudication with
24                 respect to individual Class members, which would establish
25                 incompatible standards of conduct for Defendant;

26          (b)    the prosecution of separate actions by individual Class members
27                 would create a risk of adjudications with respect to them that would,
28                 as a practical matter, be dispositive of the interests of other Class

- 12 -

members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and,

(c)    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

67.    This suit seeks only damages and injunctive relief for recovery of statutory damages on behalf of Class and it expressly is not intended to request any recovery for personal injury and claims related thereto.

**FIRST CAUSE OF ACTION**
**NEGLIGENT VIOLATIONS OF THE TCPA**
**47 U.S.C. § 227 *ET SEQ.***

68.    Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

69.    The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

70.    As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

71.    As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, an award of $500.00 statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

**SECOND CAUSE OF ACTION**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA**
**47 U.S.C. § 227 *ET SEQ.***

72.    Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

73.    The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to

each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

74.    As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

75.    As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., Plaintiff and all Class members are also entitled to, and do seek, an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, prays for the following relief:

- That this action be certified as a Class Action, establishing the Class and any appropriate sub-classes that the Court may deem appropriate;

- Appointing Plaintiff as the representative of the Class;

- Appointing the law firms representing Plaintiff as Class Counsel;

- An award of $500.00 in statutory damages to Plaintiff and each Class member for each and every negligent violation of 47 U.S.C. § 227(b)(1) by Defendant, pursuant to 47 U.S.C. § 227(b)(3)(B);

- An award of $1,500.00 in statutory damages to Plaintiff and each Class member for each and every knowing and/or willful violation of 47 U.S.C. § 227(b)(1) by Defendant, pursuant to 47 U.S.C. § 227(b)(3)(B);

- Pre-judgment and post-judgment interest;

- An order providing injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A);

- Costs of suit;

- An award of reasonable attorneys' fees and costs to Plaintiff and the Class, pursuant to the common fund doctrine and, *inter alia,* California Code of Civil Procedure § 1021.5;

- Any other further relief that the court may deem just and proper.

**JURY DEMAND**

76.    Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: January 5, 2021                              Respectfully submitted,

                                        **KAZEROUNI LAW GROUP, APC**

                                        By:   s/ ABBAS KAZEROUNIAN
                                              ABBAS KAZEROUNIAN, ESQ.
                                              ak@kazlg.com
                                              ATTORNEY FOR PLAINTIFF